IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUY MCQUEEN,<br><br>      Petitioner,<br><br>vs.<br><br>SUPERINTENDENT, Franklin Correctional Facility,<br><br>      Respondent. | No. 9:15-cv-00077-JKS<br><br>MEMORANDUM DECISION |

    Guy McQueen, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. McQueen is currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and is incarcerated at Franklin Correctional Facility. On August 28, 2006, McQueen was convicted upon his guilty plea of the crime of attempted assault in the first degree. *People v. McQueen*, 868 N.Y.S.2d 421, 422 (N.Y. App. Div. 2008). He was sentenced as a second felony offender to a determinate imprisonment term of 6 years and 3 months, plus 5 years of post-release supervision. *Id.* In June 2011, he was released to parole supervision. *In re McQueen v. N.Y. State Bd. of Parole*, 989 N.Y.S.2d 150, 150 (N.Y. App. Div. 2014). In May 2012, however, he was arrested for assaulting a female with whom he was having a romantic relationship and charged with violating the conditions of his parole. *Id.* In his Petition before this Court, McQueen does not contest his underlying judgment of conviction but rather challenges the determination of an administrative law judge ("ALJ") revoking his parole. Respondent has answered, and McQueen has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

Upon complaint by McQueen's girlfriend, Donielle Laughlin, McQueen was charged with violating the conditions of his release. Specifically, he was charged with striking Laughlin in the head (charge no. 2), choking her (charge no. 3), and forcibly removing her clothing and threatening to kill her (charge no. 4).[1] On August 22, 2012, and September 19, 2012, a final parole revocation hearing was held before an ALJ, where McQueen was represented by appointed counsel. The Board called three witnesses: Laughlin, and Sergeant Keeler and Officer Kelley of the Troy Police Department.

At the hearing, Laughlin recanted her statement implicating McQueen in the assault. She acknowledged that she spent the evening of May 18, 2012, at McQueen's apartment but denied that he had assaulted her. She testified that she went to the emergency room at Samaritan Hospital the following day for injuries she sustained "[b]ecause [she] was highly intoxicated, . . . had flip flops on and . . . fell." Although she claimed at the hearing that she told hospital staff that she "got into a fight with a friend," hospital records from her visit listed domestic abuse as the cause of her injuries. After she was discharged from the hospital, Laughlin went with her husband to the police station and reported to the officer on duty, Sergeant Keeler, that McQueen had assaulted and threatened her. Laughlin verified that she had signed Keeler's written statement, which said that McQueen hit her on the left side of her face, instructed her to remove her clothes and ripped off her shirt, pulled her hair and choked her, and threatened to kill her. According to Laughlin, it was her husband's idea that she file criminal charges against McQueen, but she did not contend that he forced her to do so, nor did she contend that he

---

[1] The Board of Parole ("Board") later dropped the first charge.

instructed her to make false statements to the police.  Several weeks after the incident, McLaughlin gave a statement dated June 7, 2012, to an investigator working on McQueen's behalf indicating that she had falsely accused McQueen.

Sergeant Keeler testified that Laughlin did not appear to be under the influence of alcohol at the time she made her complaint, and he spoke with Laughlin privately, out of her husband's earshot.  He directed Laughlin to tell the truth and asked her to read and sign the statement to verify its accuracy.  He noted that, while Laughlin was at the police station, McQueen sent her a text message, which Keeler personally read, indicating that McQueen knew she was at the police station.

Officer Kelley described the photographs she took of Laughlin's injuries, which included a bruise on her arm, a scratch mark on the left side of her neck, and a bruise or laceration on her right ear.  Kelley also photographed the text message that McQueen sent Laughlin, which read: "At Troy Police right now.  Are you with him?"  Kelley further testified that Laughlin told her that the injuries were caused by McQueen.

On McQueen's case in chief, he recalled Laughlin to testify on his behalf.  Laughlin reiterated that her complaint was false, and testified that she returned to Samaritan Hospital five days after her initial visit to obtain treatment for depression, which she told hospital staff was caused by her distress over filing a false report against McQueen.

McQueen also testified on his own behalf.  He stated that, on the night in question, Laughlin arrived by taxi at his apartment, but he had to report to work at midnight and told Laughlin to go to sleep shortly after her arrival.  McQueen noticed her injuries, which he said Laughlin attributed to an altercation with "some guy."  The following day, McQueen said he saw

3

Laughlin's husband's car at the police precinct and texted her to ask if she was at the station with her husband. McQueen denied that he caused any injury to Laughlin or that he forced her to recant.

By written decision, the ALJ sustained the charges against McQueen. In his decision, he noted that McQueen is a recidivist with several state convictions, the special conditions of his release included orders of protection against four different women, and, in the 11 months he had been on release before the current incident, McQueen had been placed on GPS watch because he had tried to a contact a female instructor at a correctional facility. The ALJ further found credible Laughlin's initial statement to the police as well as the officers' testimony regarding her complaint. He determined that it was sufficiently corroborated by photographic evidence as well as her hospital medical record, which indicated "domestic abuse" as the cause of her injuries. The ALJ acknowledged that Laughlin subsequently recanted her testimony and McQueen denied any wrongdoing, but he nonetheless found McQueen guilty and recommended a hold to the maximum expiration of McQueen's sentence, noting that McQueen was likely to assault Laughlin or another girlfriend in the future.

Through counsel, McQueen filed an administrative appeal, arguing that the ALJ's determination was not supported by a preponderance of the evidence, it was against the weight of the evidence, it was in violation of "lawful procedure," and was arbitrary and capricious. After the appeal was not adjudicated within four months, McQueen also raised those claims in a *pro se* Article 78 petition in county court.[2] Because McQueen raised a question of "substantial

---

[2] An inmate challenging a denial of parole pursuant to New York's parole scheme must first file an administrative appeal with the Division of Parole's Appeals Unit. *See Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005); *see also* N.Y.

evidence," the county court transferred the Article 78 petition to the Appellate Division. In his *pro se* brief to the appellate court, McQueen briefed the issues raised in his administrative appeal and also argued that the ALJ erred in admitting Laughlin's statement to the police. In support, he attached two letters from Laughlin: the first was a letter to the Commissioner of the Division of Parole in which she explained that she recanted her statement; the second was a letter to an unidentified individual in which she complained that McQueen's parole office had spoken to her negatively about McQueen. On June 26, 2014, the Appellate Division unanimously affirmed the ALJ's determination in a reasoned opinion. *In re McQueen*, 989 N.Y.S.2d at 150. Again proceeding *pro se*, McQueen sought leave to appeal in the New York Court of Appeals. In his leave application, McQueen again challenged the sufficiency of the evidence supporting the ALJ's determination. He also argued that the ALJ was biased against him because the ALJ was well-acquainted with Laughlin's husband, who was a corrections officer. The Court of Appeals summarily denied leave on October 21, 2014. *In re McQueen v. N.Y. State Bd. of Parole*, 20 N.E.3d 662 (N.Y. 2014).

     McQueen timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on February 13, 2015.

---

C.P.L.R. ("CPLR") § 7801; N.Y. COMP.CODES. R. & REGS. tit. 9, § 8006.1. If the Appeals Unit does not issue a decision within four months of the date the appeal is perfected, "the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken." N.Y. COMP. CODES. R. & REGS. tit. 9, § 8006.4(c).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, McQueen challenges the ALJ's determination revoking his parole on the grounds that the determination was not supported by substantial evidence and the ALJ was biased against him.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536

U.S. 584 (2002). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

IV. DISCUSSION

A.  Sufficiency of the Evidence

McQueen first argues that the evidence submitted at the final parole revocation hearing was insufficient to sustain the parole violations by a preponderance of the evidence.

As an initial matter, Respondent argues that McQueen has not exhausted his insufficiency of the evidence claim before the state courts. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Like petitions challenging criminal convictions, habeas petitions addressing parole revocations are subject to the aforementioned exhaustion requirements. *McCullough v. N.Y. State Div. of Parole*, No. 9:11-CV-1112, 2015 WL 2340784, at *4

(N.D.N.Y. Apr. 15, 2015); *Scales v. N.Y. State Div. of Parole*, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005).

In this case, McQueen argued on direct appeal that the ALJ's determination was against the weight of the evidence and cited state case law in support. However, "[a] weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). In his Petition, McQueen therefore does not contend that the determination was against the weight of the evidence, but rather argues that the determination was not supported by legally sufficient evidence. A sufficiency of the evidence claim is based on federal constitutional principles and thus proper on federal habeas review. *Id.*

Respondent nonetheless argues that McQueen cannot raise his insufficiency of the evidence claim here because he did not properly assert that claim before the state courts. The record indicates that, on direct appeal, McQueen stated that "[t]he ALJ's decision is not supported by substantial evidence," but the cases he cited in support were all state law cases relating to the New York requirement under N.Y. EXEC. LAW § 259-i(3)(f)(viii) that parole revocation decisions be supported by a preponderance of the evidence. It therefore appears that he did not present on federal constitutional terms his challenge to the sufficiency of evidence on direct appeal.

However, as mentioned, McQueen also argued that the determination was against the weight of the evidence, and at least some federal courts in this Circuit have concluded that presenting a weight of the evidence claim without more also raises a federal sufficiency of the

9

evidence claim for purposes of habeas exhaustion. *See, e.g.*, *Williams v. LaValley*, No. 9:12-cv-01141, 2014 WL 1572890, at *3 (N.D.N.Y. Apr. 17, 2014); *Martin v. Brown*, No. 08-CV-0316, 2010 WL 1740432, at *7-8 (E.D.N.Y. Apr. 29, 2010). Indeed, the Second Circuit has suggested in dicta that a petitioner who raises a state law weight of the evidence claim on direct appeal has both raised and exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes. *See Liberta v. Kelly*, 839 F.2d 77, 80 n.1 (2d Cir. 1988); *see also Wilson v. Heath*, 938 F. Supp. 2d 278, 290 (N.D.N.Y. 2013) (noting that "the Second Circuit [in *Liberta*] has suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes"). In an abundance of caution, this Court will assume that the Second Circuit will ultimately clearly hold that, for exhaustion purposes, the presentation of a weight of the evidence claim is sufficient to exhaust a federal sufficiency of the evidence claim and address the merits of the claim.

As previously mentioned, a parole revocation decision must be supported by a preponderance of the evidence. N.Y. EXEC. LAW § 259-i(3)(f)(viii); *see also Torres v. Berbary*, 340 F.3d 63, 69-71 (2d Cir. 2003). "The standard for challenging the sufficiency of the evidence for a parole revocation is the same as for a criminal conviction; in both cases, the habeas petitioner 'bears a very heavy burden.'" *Suce v. Taylor*, 572 F. Supp. 2d 325, 340 (S.D.N.Y. 2008) (quotation omitted); *see also United States v. Pierce*, 224 F.3d 158, 164 (2d Cir. 2000). When challenging the sufficiency of the evidence supporting a parole revocation under state law, "'to withstand judicial review, there need only be some factual basis for the Board's

determination that the parolee did violate the terms and conditions of his parole.'" *Suce*, 572 F. Supp. 2d at 340 (citing *McNeil v. Schubin*, 353 F. Supp. 166, 167 (S.D.N.Y. 1973)).

The petitioner's burden is even more onerous on federal habeas review. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the [violation] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

In this case, a review of the record demonstrates ample proof from which the ALJ could find by a preponderance of the evidence that McQueen violated the conditions of his release. As the Appellate Division reasonably concluded on direct appeal:

> Here, the testimony of the police officers involved in the case, the police report containing the victim's statement and the victim's own testimony, in which she admitted to implicating [McQueen] in the assault, provide ample evidence supporting the conclusion that [McQueen] assaulted the victim in the manner alleged and that he was guilty of the charges at issue. The victim's recantation of her statement and [McQueen's] testimony that he did not assault her presented a credibility issue for [the ALJ] to resolve.

*In re McQueen*, 989 N.Y.S.2d at 150 (citations omitted).

McQueen's arguments in state court and in his Petition merely attack the credibility determinations made by the ALJ as factfinder, which, as discussed, are entitled to a substantial amount of deference on habeas review. *See Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 945-46 (2d Cir. 1976) (habeas court must defer to the underlying factual findings concerning the adequacy of evidence as a federal court lacks the power to "substitute its own discretion" for that of the factfinder). The proper weight to be accorded to the evidence and the credibility of the witnesses are determinations for the factfinder and are not grounds for reversal, even on direct appeal. *Maldonando v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). This Court must presume on federal habeas review that such credibility determinations were correct. 28 U.S.C. § 2254(e)(1); *see also Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003). McQueen has not offered any evidence, much less the "clear and convincing" evidence required by § 2254(e)(1), to rebut the presumption of correctness accorded to the ALJ's credibility determination. *See Suce*, 572 F. Supp. at 340. Because there was legally sufficient evidence to support the ALJ's parole revocation decision, McQueen is not entitled to relief on this ground.

B.  Judicial Bias

McQueen also challenges the ALJ's decision on the ground that the ALJ was biased against him because the ALJ was "a personal acquaintance of [Laughlin's] husband."

Respondent correctly contends that McQueen has failed to exhaust his judicial bias claim. McQueen raised this claim for the first time in his leave application to the New York Court of Appeals. Under New York law, consideration before the Court of Appeals of leave applications related to decisions by the Appellate Division is discretionary. N.Y. C.P.L. § 450.90(1) (stating that a "certificate granting leave" is required to appeal an order of an

intermediate appellate court). As Respondent notes, "[r]aising a federal claim for the first time in an application for discretionary review" is insufficient to exhaust the claim unless discretionary review is granted and the claim is addressed on the merits. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000). Here, the Court of Appeals summarily denied McQueen's leave application. *In re McQueen*, 20 N.E.3d at 662. Therefore, this claim remains unexhausted and is denied on that ground.

Even if McQueen had exhausted his claim, however, he would not be entitled to relief on it. In order to prevail on a claim of judicial bias, a petitioner must show that he was denied a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964). Here, McQueen provides no support for his assertion that the ALJ was "a personal acquaintance of [Laughlin's] husband." In his leave application to the Court of Appeals, McQueen purported to quote from an affidavit when he stated that the ALJ and Laughlin's husband, a corrections officer, were "acquaintances at the building where the hearing took place and have worked at the same location for many years and are familiar with each other." However, there appears to be no such quote in any affidavit contained in the record, which indeed contains no evidence whatsoever of any relationship between the two men. As such, McQueen's claim that the ALJ was biased against McQueen due to his alleged relationship with the victim's husband is based on pure speculation with no record support, and the claim cannot provide a basis for habeas releif. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts may not grant "habeas relief on the basis of little more than speculation with slight support"); *Youngblood v. Conway*, 426 F. Supp. 2d 107, 127 (W.D.N.Y.

13

2006) (because petitioner's claim was "based on nothing more than mere speculation, it cannot provide a basis for habeas relief").

In his Traverse, McQueen does not contend that record support exists for his assertion that the ALJ was a personal acquaintance of Laughlin's husband, but nonetheless argues that the record evinces the ALJ's antagonism. Specifically, he asserts that the ALJ called him a "bully" and stated that McQueen was "very likely to do this again, to Laughlin or a new catch." According to McQueen, the ALJ's language throughout the hearing "paints a very manipulative picture." But a state court judge is required to recuse himself for bias only if he has demonstrated "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *McMahon v. Hodges*, 382 F.3d 284, 290 (2d Cir. 2004) (holding that judge's statement that defendant would likely be convicted given evidence at co-defendant's trial did not require recusal); *see also LoCascio v. United States*, 473 F.3d 493, 496-97 (2d Cir. 2007) (recusal properly denied where rulings did not evidence deep-seated antagonism). A review of the record fails to reveal such deep-seated antagonism. Rather, any instances where McQueen may have felt that the ALJ was hostile towards him appear to be insignificant offhand comments or examples of "stern and short-tempered . . . efforts at courtroom administration." *See Litesky*, 510 at 556. Nor does the ALJ's ultimate determination against McQueen show bias; "adverse 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" *Lipin v. Sawyer*, 395 F. App'x 800, 802 (2d Cir. 2010) (quoting *Liteky*, 510 U.S. at 555).[3] Accordingly, McQueen cannot prevail on his judicial bias claim either.

---

[3] Cited for persuasive value pursuant to Second Circuit Rule 32.1.1.

# V. CONCLUSION

McQueen is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 23, 2015.

           /s/ James K. Singleton, Jr.
           JAMES K. SINGLETON, JR.
           Senior United States District Judge